UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ADOLFO GODOY,

Petitioner,

v.

RENEE BAKER, *et al.*,

Respondents.

Case No. 3:14-cv-00524-MMD-WGC

ORDER

## I. SUMMARY

Petitioner Adolfo Godoy's habeas corpus petition brought under 28 U.S.C. § 2254 is before the Court for final adjudication on the merits. For the reasons discussed below, the Court denies the petition.

## II. BACKGROUND

### A. Procedural History

On February 4, 2010, a jury found Petitioner guilty of robbery and possession of a stolen motor vehicle. (Exh. 43.)[1] The state district court adjudicated him a habitual criminal and sentenced him to two terms of 25 years with the possibility of parole after ten years, to run concurrently. (Exh. 58.) Judgment of conviction was entered on June 14, 2010. (Exh. 60.) The Nevada Supreme Court affirmed Petitioner's convictions and sentences in December 2010. (Exh. 80.)

After an evidentiary hearing, the state district court denied Petitioner's state postconviction petition for a writ of habeas corpus, and the Nevada Supreme Court affirmed the denial in May 2014. (Exhs. 82, 97-100,114.)

///

[1]The exhibits referenced in this order are exhibits to respondents' motion to dismiss (ECF No. 24), and are found at ECF Nos. 25-29.

In October 2014, Petitioner filed his federal habeas petition. (ECF No. 6.) He ultimately filed a second-amended petition in September 2015. (ECF No. 21.) Respondents have now answered the remaining claims (ECF No. 50), and Petitioner filed a traverse. (ECF No. 59.)

**B. Victim's Trial Testimony**

Petitioner's former girlfriend, Angelic Lavatai, testified at his trial. (Exh. 35 at 120-238, Exh. 36 at 11-166.) She testified that she met Petitioner in 2007, and they dated exclusively until about June 2008. When they met, he worked full-time and lived in a halfway house. He did not have a car. After they broke up, she would see him occasionally. He called her every so often for money and rides. Lavatai became pregnant by Petitioner, but she terminated the pregnancy without telling him because "I was just scared of him." (Exh. 35 at 130.)

She testified that on the day in question in July 2008, Petitioner showed up at her door when she was on the way to work that morning and wanted her to drive him to her storage unit where he had some clothes. She reluctantly agreed but repeatedly told him he had to get out of the car at the storage unit and kept her colleague on the phone the entire time "so if anything did happen, she would know what was going on and she could help me if anything did happen." (*Id*. at 139.) When she pulled up at the storage unit Petitioner told her he was not going to get out of the car, and he was going to take the key from her. He twisted her hand, she let go of the key and he took the key and got out of the car. Lavatai went into the rental office and told them what happened. She walked outside and saw Petitioner get in the car and drive away. She was afraid to intervene. An employee with the storage facility gave her a ride to work, and she called the police on the way. Surveillance footage of the incident was shown to the jury.

About two weeks later, the police called her at 3:30 a.m., told her that they had found her car, and that it was totaled. They directed her to an apartment complex where she knew that a friend of Petitioner's lived. The car had hit a curb hard; the front end was hanging off and fluids were pouring out. Petitioner's wallet and some items of mail were

recovered from inside the vehicle. Petitioner was in the iron workers union, and the trunk contained a hard hat and some tools that did not belong to Lavatai.

After that, Lavatai did not have a car so she got rides from friends and rented cars. In September she had a rental car and planned to drive to Las Vegas for a job interview and to visit her children. The morning she was leaving, she walked out her front door with a rolling suitcase, her purse and the car keys. Petitioner startled her from behind and asked her where she was going. She told him she was going on a trip. He grabbed her forearm and punched her hand and took the keys from her. Petitioner got in the car; Lavatai tried to keep him from closing the door and he pinched her finger in the door. He called her four or five times over the next couple of days, and she begged him to return the car.

Days later, Petitioner again showed up at Lavatai's house. He was panicked; he said he had gotten into an accident with the rental car and asked her to drive him there so that he could retrieve his tools from the car. She drove him but they could not locate the vehicle. She then drove to a 7-Eleven where other people would be around and called the police. Petitioner got out and left on foot.

### C. Habeas Petition

Petitioner seeks habeas corpus relief on four grounds: (1) violation of his Sixth Amendment right to effective assistance of counsel; (2) violation of his Fifth, Sixth, and Fourteenth Amendment rights guaranteeing a fair hearing; (3) violation of his Fifth, Sixth, and Fourteenth Amendment rights guaranteeing a fair trial; and (4) violation of his Fifth and Fourteenth Amendment right to due process of law. (ECF No. 21 at 3, 32, 36, 51.) Respondents moved to dismiss portions of Petitioner's Second Amended Petition because many claims were time-barred and did not properly relate back. (ECF No. 24.) The Court agreed and dismissed Grounds 1.1, 1.2, 1.4, 1.5, 1.6, 1.10, 1.15, 1.18, 1.19, 1.20, 1.21, and the ineffective assistance of counsel argument Petitioner raised in Ground 4. (ECF No. 44 at 9.) The Court further dismissed Ground 2 as unexhausted. (*Id.* at 10.)

///

Accordingly, Petitioner's remaining grounds for relief—1.3, 1.7, 1.8, 1.9, 1.11, 1.12, 1.13, 1.14, 1.16, 1.17, 3, and 4—survived Respondents' motion to dismiss. (*Id.*)

## III. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

### A. Legal Standard

Ineffective assistance of counsel ("IAC") claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000) (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*.

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Court emphasized that courts "take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*. at 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S. Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S. Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011). "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id*. at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated

from best practices or most common custom." *Id*. (internal quotations and citations omitted).

**B. Defense Counsel's Evidentiary Hearing Testimony**

Defense counsel Jay Slocum testified about the defense strategy at the evidentiary hearing on Petitioner's state postconviction petition. (Exh. 98 at 82-125.) Slocum explained that it was Petitioner's belief that Lavatai would move on with her life and not pursue the charges. He told Petitioner that the district attorney was in touch with Lavatai and that she would indeed go forward. Slocum did not recall who specifically but said that his investigator contacted several people at Petitioner's request. In his judgment, none of the people Petitioner suggested would have added to the defense so he did not call them to testify. Slocum said that he did not call the officers who took the police report because on cross examination he highlighted the inconsistencies in Lavatai's statements. He was able to get all the evidence he sought through Lavatai. He stated that he was able to elicit testimony that Petitioner had a history of using Lavatai's vehicles with her consent, including the time when he was hit by a drunk driver while driving her Pathfinder with her permission. Slocum said he was not very concerned when two jurors saw Petitioner in custody because the defense introduced the large volume of calls between Lavatai and Petitioner when he was in jail, thus the jury already knew Petitioner was in custody. He stated that he did not object to the testimony that Lavatai terminated a pregnancy or that Petitioner lived in a halfway house because he thought objecting would only highlight to the jury that he was concerned that the testimony was not beneficial to Petitioner. He also said that he did not view the testimony as particularly damaging. Slocum said that he advised Petitioner that on the one hand if he testified, he could explain that he and Lavatai had been in a long-term relationship and that in his view he used the vehicles with her permission, but that on the other hand if he testified the State would impeach him with his prior criminal history.

///

///

**C. Petitioner's Claims for IAC Relief**

Petitioner alleges ten instances on which he bases his claims that he was denied effective assistance of counsel. (ECF No. 59.) The Court denies federal habeas relief to each IAC claim, for the reasons discussed below.

**1. Ground 1.3: Failure to Investigate Virginia Brown**

Petitioner argues that trial counsel failed to investigate and subpoena Virginia Brown. (ECF No. 21 at 10.) According to Petitioner, Brown helped Lavatai post his bail and had knowledge of Lavatai's propensity to accuse Petitioner of stealing her vehicles. But because Petitioner fails to demonstrate that defense counsel was deficient or that he suffered prejudice because Brown did not testify, the Court will not find that assistance of counsel was ineffective.

Brown testified at the evidentiary hearing on Petitioner's state postconviction petition. (Exh. 98 at 77-81.) She testified that she did not know Lavatai well, but that Petitioner gave her number to Lavatai, and Lavatai called her in August 2009 about posting Petitioner's bail. Lavatai told Brown that Petitioner's father was arranging to transfer bail money to Lavatai, but Lavatai did not have a bank account for the bail bondsman. Brown put Lavatai in touch with Brown's sister so that Lavatai could use the sister's bank account. Brown said at some point—she could not recall the date—Lavatai called her looking for Petitioner and told Brown that he had stolen her truck. Brown said that she told Petitioner, who showed up later with Lavatai and the truck. When asked if she offered to testify on Petitioner's behalf at trial Brown responded, "Not necessarily," though she said she had been available to testify. (*Id*. at 81.)

The Nevada Supreme Court considered and rejected Petitioner's claim now presented as Ground 1.3:

> …Godoy contends that the district court erred by denying his claim that counsel was ineffective for failing to call witnesses who would have testified that (1) Godoy paid for part of the vehicle he allegedly stole, (2) the victim had given Godoy permission to use the vehicle in the past, (3) the victim had falsely accused Godoy of stealing the vehicle in the past, and (4) the victim bailed Godoy out of jail after the incident. Godoy fails to demonstrate deficiency or prejudice. At trial, counsel cross-examined the victim regarding these assertions. And at the evidentiary hearing, counsel testified

> that he made a strategic decision to elicit this information from the victim directly rather than through witnesses because he did not believe the witnesses he located would be helpful. We conclude that the district court did not err by denying this claim.

(Exh. 114 at 2-3.) Petitioner's counsel testified that the defense did not identify any witnesses that he thought would help the defense.

Petitioner has not shown a reasonable probability of a different trial outcome if Brown had testified. Petitioner has not demonstrated that the Nevada Supreme Court's decision affirming the denial of this claim was contrary to, or involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Accordingly, the Court denies federal ground 1.3.

**2. Ground 1.7: Failure to Investigate Gene Drakulich**

Petitioner asserts that Slocum failed to investigate or interview Gene Drakulich (ECF No. 21 at 11-12.) Petitioner argues that Drakulich would have impeached Lavatai's testimony about a settlement payout stemming from an accident that pre-dated any of the events in this case in which Lavatai's vehicle was hit by a drunk driver while Petitioner was driving it with permission. But because the Court finds that Petitioner failed to demonstrate deficiency or prejudice, the Court will not find that assistance of counsel was ineffective.

At the state postconviction evidentiary hearing, Petitioner testified that around February 2008, he was driving Lavatai's Pathfinder when he was hit by a drunk driver. He said he was almost killed, and the car was destroyed. He stated that he retained Gene Drakulich, who helped him secure a settlement, and he gave money from the settlement to Lavatai to purchase a car. He stated that he asked his trial attorney to investigate that settlement because it contradicted Lavatai's trial testimony that Petitioner did not give her any money to purchase the Volkswagen Bug. (Exh. 98 at 9-11.)

Slocum testified that while Petitioner was focused on the settlement money, Slocum did not think that was of importance because the car itself was in Lavatai's name

only, and therefore, Petitioner could not take the car legally without her permission. (*Id*. at 99-100.)

The Nevada Supreme Court partly addressed this claim in its opinion:

> Godoy contends that the district court erred by denying his claim that counsel was ineffective for failing to call witnesses who would have testified that (1) Godoy paid for part of the vehicle he allegedly stole . . . . Godoy fails to demonstrate deficiency or prejudice. At trial, counsel cross-examined the victim regarding these assertions. And at the evidentiary hearing, counsel testified that he made a strategic decision to elicit this information from the victim directly rather than through witnesses because he did not believe the witnesses he located would be helpful. We conclude that the district court did not err by denying this claim.

(Exh. 114 at 3-4.) The Court also can look to the last reasoned state-court decision when analyzing a claim under the Anti-terrorism and Effective Death Penalty Act ("AEDPA"). *See Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014). Here, the Nevada Supreme Court acknowledged the district court's order and ultimately affirmed that court's reasoning. (Exhs. 100, 114.) In considering Petitioner's claim, the district court held:

> [Trial counsel] testified Gene Drakulich, Esq. represented [Lavatai] when her car (driven by Mr. Godoy) was totaled in an accident. Mr. Slocum testified that the evidence was "not important" because the car was titled in [Lavatai's] name and any money recovered belonged to [Lavatai] and not Mr. Godoy. The settlement check was used by the victim to buy the car Mr. Godoy was convicted of stealing.
>
> ...
>
> The evidence clearly established that Mr. Slocum conducted an investigation and based upon that investigation made reasonably effective strategic decisions within the bounds of professional competence. As such, Mr. Godoy fails to demonstrate that his counsel's performance was deficient or that he was prejudiced.

(Exh. 100 at 9-10.)

Petitioner has failed to demonstrate that the Nevada Supreme Court's decision affirming the denial of this claim was contrary to, or involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Accordingly, the Court denies federal habeas relief as to Ground 1.7.

///

///

**3. Ground 1.8: Failure to Introduce Reno Police Department Evidence**

Petitioner contends that trial counsel failed to introduce police reports or call three Reno police officers to testify, which he alleges would have highlighted inconsistencies between Lavatai's statements to police and her trial testimony. (ECF No. 21 at 12-13.) Because the Court fines Petitioner failed to demonstrate deficiency or prejudice, the Court will not find that assistance of counsel was ineffective.

At the evidentiary hearing, Petitioner testified that he asked his trial attorney to call the officers who made the police reports regarding the VW incident, but defense counsel never did. (Exh. 98 at 19-23.) Petitioner acknowledged that his counsel elicited testimony at trial from Lavatai that some of the statements she made to police about the incident were contradicted by the surveillance video—including whether Petitioner was inside or outside of the vehicle when he grabbed the keys from her. (Exh. 98 at 44.) Slocum had also testified at that hearing that he did not want any successful cross examination of Lavatai to be undercut by the police officers possibly explaining that the circumstances under which she gave them her statement may have contributed to the inconsistencies. *Id*. at 102-103.

The Nevada Supreme Court considered and rejected Petitioner's claim now presented as Ground 1.8:

> Godoy fails to demonstrate deficiency or prejudice. At trial, a surveillance video which captured the incident was shown to the jury and counsel cross-examined the victim regarding the inconsistencies between what could be observed in the video and her statements to police. At the evidentiary hearing on Godoy's petition, counsel testified that he made a strategic decision to rely on this cross-examination rather than present the officers' testimony because he was concerned that the officers could explain away the victim's inconsistencies. Counsel also testified that he did not want the police reports admitted because they contained prejudicial statements.

(Exh. 114 at 1-2.) Petitioner has not shown that the Nevada Supreme Court's decision affirming the denial of this claim was contrary to, or involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Accordingly, the Court denies federal habeas relief as to Ground 1.8.

**4. Ground 1.9: Failure to Explore False Allegations by Angelica Lavatai**

Petitioner argues that trial counsel failed to impeach Lavatai with her prior, allegedly false allegations against him. (ECF No. 21 at 16.) In concluding that Petitioner "fail[ed] to demonstrate deficiency or prejudice," the Nevada Supreme Court noted that trial counsel did in fact cross-examine Lavatai about these claims. (Exh. 114 at 2.) This claim is belied by the record, and Petitioner has not shown that the Nevada Supreme Court's decision affirming the denial of this claim was contrary to, or involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Accordingly, the Court denies federal habeas relief as to Ground 1.9.

**5. Ground 1.11: Failure to Investigate Cellular Phone**

Petitioner contends that trial counsel failed to investigate the cell phone recovered from the front seat of the wrecked VW bug. (ECF No. 21 at 17.) Because the Court finds that Petitioner failed to demonstrate prejudice, the Court will not find assistance of counsel was ineffective.

At the evidentiary hearing, Slocum was asked why he did not object to the evidence that a cell phone was found in the VW that did not belong to Petitioner. (Exh. 98 at 111.) He responded that he did not recall that another cell phone had been found in the car. (*Id*.)

The Nevada Supreme Court considered and rejected Petitioner's claim now presented as Ground 1.11:

> Godoy fails to demonstrate prejudice. Even assuming that the cell phone was not his, Godoy's name was written on evidence found in the vehicle and other evidence demonstrated that he had been in possession of the vehicle. We conclude that the district court did not err by denying this claim.

///

(Exh. 114 at 4.) The evidence adduced at trial indicated that items that belonged to Petitioner, including a wallet with cards in his name and some tools, were found in the VW. Petitioner has failed to demonstrate that the Nevada Supreme Court's decision affirming the denial of this claim was contrary to, or involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Accordingly, the Court denies federal habeas relief as to Ground 1.11.

**6. Ground 1.12: Failure to Provide Jury Instructions**

Petitioner claims that trial counsel failed to provide useful instructions to the jury, including an instruction on the law of "permission," or an instruction "that 'consent' was a defense to the charges." (ECF No. 21 at 18-19.) Because Petitioner has not shown a likelihood of a different outcome at trial, the Court will deny relief as to Ground 1.12.

At the evidentiary hearing, Petitioner testified that he was concerned because his counsel did not "instruct the jury that there was consent, permission and consent involved." (Exh. 98 at 27-28.)

The Nevada Supreme Court considered and rejected Petitioner's claim now presented as Ground 1.12:

> Godoy fails to demonstrate deficiency or prejudice because, during the post-conviction proceedings below, he did not present the district court with an instruction that counsel should have offered which would have altered the outcome of the trial. We conclude that the district court did not err by denying this claim.

(Exh. 114 at 4.) Lavatai testified that Petitioner took the vehicles without her permission. Petitioner has not shown a likelihood of a different outcome at trial if an instruction had been given regarding permission. He has failed to demonstrate that the Nevada Supreme Court's decision affirming the denial of this claim was contrary to, or involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Accordingly, the Court denies federal habeas relief as to Ground 1.12.

///

**7. Ground 1.13: Failure to Follow Nevada's Rules on Allocution**

Petitioner claims sentencing counsel violated NRS § 176.015(2)(b), Nevada's law on a defendant's right to address the court at sentencing, because he was unable to speak at his sentencing hearing. (ECF No. 21 at 20.) Because Petitioner has failed to show that his counsel acted deficiently or that he was prejudiced as a result, the Court declines to find that assistance of counsel was ineffective.

At the evidentiary hearing on his state postconviction petition, Petitioner testified that he was not given an opportunity to speak at his sentencing. (Exh. 98 at 32-43.) Karla Butko, who represented Petitioner at his sentencing hearing and on direct appeal, also testified at the evidentiary hearing. (Exh. 99 at 4-15.) She explained that she had two separate cases and that Petitioner had pled guilty in one case. She wrote a lengthy sentencing memorandum in the case that went to trial, arguing that the case did not warrant habitual offender enhancement. She acknowledged that Petitioner wanted to make a statement at the sentencing; she said that he had written a letter and she went over it with him. At the beginning of the hearing, it was agreed that the hearing would be bifurcated with the habitual offender issue separated from mitigation arguments. Butko stated that a "couple-hour" argument occurred about prior convictions. (*Id*. at 12.) The judge then took a recess and went off the bench for 15-20 minutes. When he returned, he announced his ruling and adjourned. Petitioner said to Butko, "I didn't even get to speak," and Butko testified that her jaw dropped because she realized he was right. (*Id*.) She raised the issue on appeal.

During the sentencing hearing in the context of the arguments regarding habitual offender treatment, Butko emphasized that Petitioner had no convictions for violent offenses, batteries or sexual offenses. (Exh. 58 at 29-30.) She discussed how he had finally gotten out of the relationship with Lavatai, had a new fiancée, was a member of the ironworkers' union, and that he planned to move closer to his parents who had agreed to support him in his sobriety.

///

The court recessed in order to consider the parties' arguments and Petitioner's criminal record. (*Id*. at 31.) When the judge returned, he explained:

> I thought about this a lot. I'm thinking about this case a lot. Mr. Godoy clearly is an engaging individual. He's got a trade. He's got family support. The court will make a specific finding that it has considered the statements made by his father at the previous hearing, which as Ms. Butko said was quite touching and is a factor that should and will be taken into consideration.
>
> He has family support. He's got a fairly stable relationship now. He appears to have been a good provider to his child. He seems to be current on child support, which weighs very heavily in this court that a father takes his responsibilities for his children seriously. That's to me a credit to Mr. Godoy.
>
> But he is a threat and he is a danger and he's a danger to people who know him in addition to perfect strangers. In this particular victim's case . . . she was a vulnerable victim. . . .
>
> In this case, the court finds that a life sentence without a possibility of parole is not appropriate in this case. Likewise, the court finds that . . . Mr. Godoy needs to do more time than just five years. . . .

(*Id*. at 35-37.) The court then adjudicated Petitioner a habitual criminal and sentenced him to two terms of 10 to 25 years, with the counts to run concurrently. (*Id*. at 35-38.)

In its order affirming the denial of the state postconviction petition, the Nevada Supreme Court addressed this claim, albeit somewhat indirectly:

> Godoy contends that the district court erred by denying his claim that he was deprived of his right to allocution. On direct appeal, this court concluded that Godoy's right to allocution was violated, but Godoy failed to demonstrate prejudice; the law-of-the-case doctrine precluded further litigation on this issue. *See Hall v. State*, 535 P.2d 797, 799 (Nev. 1975). We conclude that the district court did not err by denying this claim.

(Exh. 114 at 6.) In considering Petitioner's claim, the district court held that while sentencing Petitioner without allowing him to speak violated NRS § 176.015, the error was harmless. (Exhs. 100 at 10, 80 at 4-5 (citing *Murray*, 745 F.3d at 996 (holding the court can look to the last, reasoned state-court decision in evaluating a claim under AEDPA)).)

Respondents point out that the statute identified that Petitioner relies on imposes a duty on the trial court, not trial counsel, to "address the defendant personally and ask the defendant if…the defendant wishes to make a statement in his or her own behalf and

to present any information in mitigation of punishment." NRS § 176.015(2)(b). Thus, they urge that any alleged error in this regard is trial court error, not trial counsel error. (ECF No. 50 at 14.)

Moreover, even if sentencing counsel somehow erred, the Court agrees that Petitioner fails to show any prejudice flowing from counsel's actions. While Petitioner did not have the opportunity to speak, the sentencing court explicitly considered Petitioner's work skills, family support, and ability to care and provide for his child in adjudicating him a habitual criminal. In his second-amended petition, Petitioner asserted that he would have provided the trial court with a statement of remorse and apology and describe his plans and hopes for the future (ECF No. 21 at 20-21.) However, Petitioner consistently asserted that Lavatai lied, thus it is unclear what sort of statement of remorse and apology Petitioner would have offered at sentencing.

In any event, the Court concludes that Petitioner has failed to demonstrate that the Nevada Supreme Court's decision affirming the denial of this claim was contrary to, or involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Accordingly, the Court denies federal habeas relief as to Ground 1.13.

**8. Ground 1.14: Failure to Object to Jurors Seeing Petitioner in Custody**

Petitioner claims that trial counsel failed to object when a juror saw Petitioner in custody. (ECF No. 21 at 21.) Because Petitioner has failed to show that defense counsel acted deficiently or that he was prejudiced, the Court does not consider counsel's assistance ineffective.

At the evidentiary hearing, Petitioner testified that at one point at trial, he went to the restroom and two jurors saw him in custody. Defense counsel likewise testified that he was reluctant to bring it to the Court's attention, but did so at Petitioner's insistence. (Exh. 98 at 26-27.) At that hearing, Slocum testified that he was not very concerned when

two jurors saw Petitioner in custody because the defense introduced the large volume of calls between Lavatai and Petitioner when he was in jail, thus the jury already knew Petitioner was in custody. (*Id*. at 108-109.)

The Nevada Supreme Court considered and rejected Petitioner's claim now presented as Ground 1.14:

> Godoy fails to demonstrate deficiency or prejudice. Counsel testified that the juror seeing Godoy in custody was irrelevant and he did not seek an instruction because he had informed the jury that Godoy was in custody in order to demonstrate the number of times the victim contacted him after the incident, and the district court instructed the jury that it was to consider Godoy's custody status only for that purpose. We conclude the district court did not err by denying this claim.

(Exh. 114 at 3-4.) Petitioner has not shown that the Nevada Supreme Court's decision affirming the denial of this claim was contrary to, or involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Accordingly, the Court denies federal habeas relief as to Ground 1.14.

### 9. Ground 1.16: Failure to Object to Lavatai's Injurious Remarks

Petitioner claims trial counsel failed to object to Lavatai's testimony about other alleged bad acts, such as her statements that (1) Petitioner lived in a halfway house when she met him; (2) Lavatai aborted a pregnancy resulting from her relationship with Petitioner; and (3) Petitioner "wormed" his way into Lavatai's life. (ECF No. 21 at 21-24.) Because defense counsel used strategic discretion by not objecting to these claims, the Court finds assistance of counsel was not ineffective.

At the evidentiary hearing, Slocum stated that he did not object to the testimony that Lavatai terminated a pregnancy or that Petitioner lived in a halfway house because he thought objecting would only highlight to the jury that he was concerned that the testimony was not beneficial to Petitioner. He also said that he did not view the testimony as particularly damaging and in fact Lavatai's statements were perhaps more damaging to her own credibility. (Exh. 98 at 118-119.)

The Nevada Supreme Court considered and rejected Petitioner's claim now presented as Ground 1.16:

> Godoy fails to demonstrate the district court erred by denying this claim because he has not provided citation to the record wherein the allegedly improper evidence was admitted, see NRAP 3C(e)(1)(C); NRAP 28(e)(1), and based on our review of the record provided, we discern neither deficiency nor prejudice.

(Exh. 114 at 3.) Defense counsel made strategic decisions in handling Lavatai's testimony, and Petitioner has not shown counsel's deficiency or how he suffered prejudice. Petitioner has also failed to demonstrate that the Nevada Supreme Court's decision affirming the denial of this claim was contrary to, or involved an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Accordingly, the Court denies federal habeas relief as to Ground 1.16.

**10. Ground 1.17: Failure to Object to Prosecution's Closing Argument**

Petitioner claims trial counsel failed to object to the State's improper statements during closing arguments that amounted to character assassinations. (ECF No. 21 p. 24-25.) During his closing arguments, the prosecutor argued that Petitioner "used" Lavatai and "wormed his way back in" to her life when he needed something. (Exh. 38 at 53, 62-63.) But this claim appears to be unexhausted (Exhs. 110, 114), and even if it were not, this claim lacks merit. Lavatai's testimony supported the assertions that Petitioner manipulated and used her. And to the extent that this claim is about counsel failing to object to testimony or observations about other bad acts, the Court denies it on the same bases as Ground 1.16 above.

## IV. FAIR TRIAL (GROUND 3)

Petitioner asserts that the admission of evidence of other bad acts deprived him of his Fourteenth Amendment rights to due process and a fair trial. (ECF No. 21 at 30-42.) Because Petitioner has failed to demonstrate that the Nevada Supreme Court's decision

was contrary to or an unreasonable application of clearly established law, the Court will deny relief as to Ground 3.

Petitioner challenges Lavatai's testimony, referring to her statements as "an unfettered attack on [his] character." (*Id*. at 38.) Specifically, he claims the trial court improperly admitted testimony "that [Petitioner] impregnated [Lavatai], that she had to have an abortion because [Petitioner] was a bad person and would make a bad father, that he rarely saw his daughter, that he used Lavatai and wormed his way back into her life." (*Id*.)

Generally, admission of evidence is a question of state law. State law errors do not warrant federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Rather, a petitioner must establish "whether [or not] the state proceedings satisfied due process." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).

The Nevada Supreme Court rejected this claim on direct appeal:

> Godoy contends that the district court improperly admitted evidence of his character by allowing the victim to testify that he impregnated her, she had an abortion, and that he lived in a halfway house, worked part-time, had not seen his daughter in years, did laundry at the victim's house, and used the victim by "worming' his way back into her life and taking advantage of her. "We review a district court's decision to admit or exclude evidence for an abuse of discretion. However, failure to object precludes appellate review of the matter unless it rises to the level of plain error." *Mclellan v. State*, 182 P.3d 106, 109 (Nev. 2008) (internal footnote and quotation marks omitted). Godoy did not object to this evidence and we conclude that it does not rise to the level of plain error.

(Exh. 80 at 2-3.)

Petitioner failed to object to this testimony at trial. This "bad act" testimony was minimal, and Petitioner has not demonstrated that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d). Accordingly, federal habeas relief is denied as to Ground 3.

//

//

**V. CUMULATIVE EFFECT OF MULTIPLE ERRORS (GROUND 4)**

Petitioner contends that the cumulative effect of multiple trial errors infected his trial with such unfairness that his Fourteenth Amendment due process rights were violated. (ECF No. 21 at 53.) Because the Court finds that Petitioner has not shown that the Nevada Supreme Court's determination—that any errors did not cumulatively deny Petitioner the right to a fair trial—was contrary to or an unreasonable application of clearly established law, the Court will deny relief as to Ground 4.

The cumulative effect of multiple errors can violate due process and warrant habeas relief where the errors have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).

The Nevada Supreme Court concluded that an error occurred in Petitioner's trial—"that he was denied his statutory right to allocution at sentencing." (Exh. 8 at 4.) The state supreme court held that the error did not, however, amount to reversible plain error. (*Id.* at 4.) The court then considered whether cumulative error deprived Petitioner of a fair trial and reasoned "[t]o the extent that there was error, we have balanced the relevant factors and conclude that the cumulative effect of the errors did not deprive Godoy of a fair trial and sentencing and that no relief is warranted." (Exh. 80 at 7.)

The Nevada Supreme Court's decision that no relief was warranted for cumulative error was not contrary to, or involve an unreasonable application of, clearly established U.S. Supreme Court law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Accordingly, the Court denies federal habeas relief as to Ground 4.

The petition, therefore, is denied in its entirety.

**VI. CERTIFICATE OF APPEALABILITY**

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability ("Certificate"). Accordingly, the court has *sua sponte* evaluated the claims

within the petition for suitability for the issuance of a Certificate. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Under 28 U.S.C. § 2253(c)(2), a Certificate may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a Certificate will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

Having reviewed its determinations and rulings in adjudicating Petitioner's petition, the Court finds that none of those rulings meets the *Slack* standard. The Court therefore declines to issue a certificate of appealability for its resolution of any of Petitioner's claims.

## VII. CONCLUSION

It is therefore ordered that the second-amended petition (ECF No. 21) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED this 19th Day of January 2021.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE